Argued and submitted May 29, amended judgments in 99C43235 vacated, original judgment vacated and remanded on Count 2 and dismissed in Count 1; 99C44880 remanded for resentencing; otherwise affirmed July 24, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## SHAWN LEROY GIBSON,
*Appellant.*

99C-43235, 99C-44880, 99C-49311;
A108619 (Control), A108620, A108621
(Cases Consolidated)

51 P3d 619

Daniel M. Carroll, Deputy Public Defender, argued the cause for appellant. With him on the briefs was David E. Groom, Acting Executive Director, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals from convictions for unlawful possession of a controlled substance (PCS), forgery, and racketeering, entered following a plea agreement involving three cases that were consolidated for purposes of sentencing. He argues that the trial court erred in entering a PCS conviction in one of the cases when he pleaded guilty only to a charge of felony driving while suspended (DWS) in that case. He also asserts that the trial court failed to identify an adequate number of departure factors to justify a double upward departure sentence on his conviction for forgery in another of the consolidated cases.[1] We review for errors of law, ORS 138.222, and, in two of the three cases, remand for further proceedings.

Defendant was charged in three indictments with nine separate offenses. In case number 99C43235 (Case One), defendant was charged with one count of PCS and one count of felony DWS. In case number 99C44880 (Case Two), defendant was charged with one count of first-degree forgery. In case number 99C49311 (Case Three), defendant was charged with one count of racketeering, two counts of first-degree forgery, two counts of second-degree forgery, and one count of PCS. At a plea hearing, defendant pleaded guilty to the DWS count in Case One, to the first-degree forgery count in Case Two, and to the racketeering and PCS counts in Case Three. After accepting defendant's guilty pleas, the trial court set a sentencing date and ordered a presentence investigation.

At the sentencing hearing the court pronounced sentence as follows:

"Dealing first with the [PCS charge], I find that the appropriate Grid Block is a 1C. I find aggravating factors

---

[1] Defendant's third assignment of error is that the trial court erred in imposing a departure sentence on his racketeering conviction in the third of the three cases. He argues that we should exercise our discretion to review this unpreserved error because the trial court did not have jurisdiction to impose a departure sentence on that conviction. Defendant acknowledges that we have rejected that argument in *State v. Crain,* 177 Or App 627, 33 P3d 1050 (2001), *rev den* 334 Or 76 (2002), but he urges us to overrule *Crain.* We decline to do so and, accordingly, we reject defendant's third assignment of error without further discussion.

for a dispositional, durational departure. Previous probations have not resulted in modification of your behavior, sir, to become law abiding and I sentence you to six months with one-year post-prison supervision.

"Moving then to the Forgery in the First Degree. I find the appropriate Grid Block is a 2C. I find basis for departure. There are multiple victims in this particular charge. I sentence you to one year with the Department of Corrections, with one-year post-prison supervision, that sentence to be consecutive to all other sentences.

"In regard to the Racketeering, I find that the appropriate Grid Block is an 8C. I find aggravating factors to do a dispositional and a durational departure. You were on probation at the time this particular offense was committed. You played a key role in using computer software to provide checks for others to cash and as I said, there were multiple victims. I find that in this case the previous criminal involvement that you have persistently engaged in is very extensive and some of those previous charges are quite dissimilar [sic] to this particular charge. You have accumulated an extensive criminal record for your age and because of those aggravating factors, I sentence you to sixty-eight months with the Department of Corrections, three years post-prison supervision. I find that each aggravating factor I mentioned for each charge is in and of itself sufficient to support the departures. And, of course, the sentence for the Racketeering is consecutive to the previously mentioned sentences.

"Anything further from the State?

"[PROSECUTOR]:   There is also count six, Possession of a Controlled Substance in that. * * *

"THE COURT:   Thank you for pointing out the additional count. In regard to that count, Possession of a Controlled, Schedule Two Controlled Substance, I find the appropriate Grid Block is a 1C.

"[PROSECUTOR]:   Your Honor, that, since that is the same indictment that would have to go back to [column] I. So we would be required under the OAR as to sentence him under [column] I since it's not a separate case. Is that correct, [Defense Counsel]?

"[DEFENSE COUNSEL]:   Mm-hmm.

"THE COURT:   So you're saying sir, that the appropriate Grid Block for that particular charge would be?

"[DEFENSE COUNSEL]:   1I.

"[PROSECUTOR]:   A 1I.

"THE COURT:   A 1I?

"[PROSECUTOR]:   Yes, and that is statutory under the sentencing guidelines provisions.

"THE COURT:   All right. In that instance I find that the presumptive sentence is eighteen months probation, ninety over thirty custody units and I impose the presumptive sentence in regard to that charge. That to run subsequent to the time you're incarcerated."

Defendant's attorney then made the following objections to the sentence the court imposed:

"[DEFENSE COUNSEL]:   Okay. Then I want to address the departure factors that were mentioned. I tried to take notes as you were speaking and if I make a mistake I apologize. Several of the cases, for example, the forgery and the first [PCS] that you sentenced [defendant] on are presumptive probationary sentences. And to the extent that the Court failed to justify two types of departure, [defendant] would object. What I'm saying is, is there is not only a dispositional departure the Court engaged in, but also a durational. There needs to be separate aggravating factors for each. I don't, I didn't hear a separate aggravating factor for each and to the extent that the Court failed to do that, I would object to those. Additionally, to the extent that the Court used the same aggravating factors for departure, I don't think that's appropriate and I heard that, let's see, in the Forgery One you said multiple victims was the reason for departure and you also used that in the Racketeering. Although you used a couple other reasons as well, but I don't think you can use the same reason.

"THE COURT:   That's why I stated each of the reasons that I mentioned I felt were—

"[DEFENSE COUNSEL]:   —right—

"THE COURT:   —substantial enough to justify the departure. Anything further for the record?

"[DEFENSE COUNSEL]: The biggest concern I have is separate reasons for each type of departure and I want to make sure the record's clear that I brought that up to the Court."

The court then entered written judgments memorializing defendant's convictions and sentences. Those judgments were prepared on standardized forms with spaces filled in by the court, as indicated here by bold type. The judgment in Case One states that "[d]efendant has been convicted of **Possession of Controlled Substances**, as alleged in Count **1** of the * * * indictment * * *" by guilty plea. The judgment further states that the "[s]tate's motion to dismiss is allowed for count[ ] **2** [DWS]." The judgment in Case Two provides that "[d]efendant has been convicted of **Forgery I**, as alleged in Count **1** of the * * * indictment" by guilty plea. Two judgments were entered in Case Three. The first provides that "[d]efendant has been convicted of **Racketeering**, as alleged in Count **1** of the * * * indictment" by guilty plea. That judgment also provides that the "[s]tate's motion to dismiss is allowed for count(s) **2, 3, 4, 5**." The second judgment in Case Three states that "[d]efendant has been convicted of **Possession of Controlled Substances**, as alleged in Count **6** of the * * * indictment" by guilty plea. The court imposed terms of incarceration and post-prison supervision in each judgment as it had specified at the sentencing hearing.

Comparing the judgments to defendant's pleas, it is apparent that the trial court entered a judgment of conviction on the PCS count in Case One even though defendant did not plead guilty to that charge and that it dismissed the DWS count in Case One even though defendant pleaded guilty to that charge.

On appeal, defendant first assigns error to his conviction on the PCS count in Case One. Defendant asserts that the court could not convict him of a charge to which he did not plead guilty and of which he was not found guilty after a trial on the merits. Defendant acknowledges that he did not preserve the claimed error but argues that it is apparent on the face of the record and that we should exercise our discretion to review it. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). In his second assignment of error,

defendant contends that the court erred in entering a departure sentence on his forgery conviction both as to disposition and duration based on only one aggravating factor. We discuss each claim of error in turn.

After defendant filed his opening brief on appeal, the state filed a motion in the trial court, pursuant to ORS 138.083, to modify the judgment in Case One to accurately reflect defendant's plea in that case. We held the appeal in abeyance pending the trial court's decision on the motion. In August 2001, the trial court entered an amended judgment in Case One, providing that "[d]efendant has been convicted of **Driving While Suspended - Felony**, as alleged in Count **2** of the * * * indictment," by guilty plea. It also provided that the "[s]tate's motion to dismiss is allowed for count[ ] **1** [PCS]." The amended judgment was entered "***nunc pro tunc* 16 Nov 1999.***"

In light of the amended judgment, the state asserts that defendant's first assignment of error is moot. Defendant replies that the trial court did not have jurisdiction under ORS 138.083 to amend the judgment in Case One, that the court lacked authority to sentence him on the DWS count in his absence, and that the amended judgment was erroneously issued "*nunc pro tunc.*"

We need not determine whether ORS 138.083 granted the trial court the authority to amend the judgment in Case One to reflect a conviction and sentence for DWS rather than PCS because defendant was not personally present when the court entered the amended judgment in Case One, and there is nothing in the record to suggest that he waived personal appearance. That circumstance requires vacation of the amended judgment.

ORS 137.030 provides, in part:

"(1)   For the purpose of giving judgment, if the conviction is for a felony, the defendant shall be personally present; but if it is for a misdemeanor, judgment may be given in the absence of the defendant.

"(2)   As used in this section, 'personally present' means that a defendant:

"(a)   Is physically present before the court; or

"(b) Is imprisoned and does not object to appearing before the court by means of simultaneous television transmission allowing the court to observe and communicate with the defendant and the defendant to observe and communicate with the court."

A defendant's rights to be personally present and to be heard when sentenced on a felony are grounded both in ORS 137.030 and in Article I, section 11, of the Oregon Constitution. *DeAngelo v. Schiedler*, 306 Or 91, 94-95, 757 P2d 1355 (1988); *State v. DeCamp*, 158 Or App 238, 242, 973 P2d 922 (1999). Those provisions subserve the right of allocution, whereby the defendant may present mitigating circumstances to the court in the hope of receiving leniency. *See State v. Southards*, 172 Or App 634, 640, 21 P3d 123 (2001). Moreover, they "extend[ ] to sentence modification if the modification is 'substantive' as opposed to 'administrative.'" *DeCamp*, 158 Or App at 242.

■ In Case One, the amended judgment modified the original judgment by changing the crime of conviction. For the purpose of ORS 137.030 and Article I, section 11, that change was substantive, not administrative. Because defendant was not brought before the court for pronouncement of sentence on the DWS charge, he never had an opportunity to explain the circumstances surrounding that offense. The court's pronouncement of sentence without giving defendant an opportunity to do so violated his rights under ORS 137.030 and Article I, section 11. Accordingly, the amended judgment was improperly entered, and we vacate it. As a result, the original judgment in Case One remains the focus of our analysis, and, contrary to the state's assertion, defendant's first assignment of error pertaining to that judgment is not moot.

■ Defendant acknowledges that the issue raised in his first assignment of error was not preserved; however, we have discretion to review unpreserved errors of law if they are "apparent on the face of the record." ORAP 5.45(4)(b); *Ailes* 312 Or at 381. If we choose to exercise that discretion, we must "articulate [our] reasons for doing so." *Id.* at 382. Here, the error that defendant requests us to review is one of

law, and it is apparent on the face of the record, as demonstrated by comparing the transcript from the plea hearing to the written judgments entered following the sentencing hearing. We choose to exercise our discretion to review the error, because convicting defendant of a crime to which he did not plead guilty and of which a jury did not find him guilty violated defendant's due process rights. *See Jackson v. Virginia*, 443 US 307, 314, 99 S Ct 2781, 61 L Ed 2d 560 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."). Although defendant may not gain any benefit in the form of a decrease in his overall term of incarceration and post-prison supervision, we review his first assignment of error in order to protect that constitutional right. *See State v. Longenecker*, 175 Or App 33, 36-37, 27 P3d 509, *rev den* 332 Or 656 (2001) (reviewing unpreserved sentencing error even though correcting the defendant's sentence still "will most likely result in [the] defendant's imprisonment for the rest of his life").

It is undisputed that the trial court erred in entering a judgment convicting defendant of PCS in Case One and dismissing the DWS charge. *See* ORS 137.020. Consequently, we vacate the original judgment in Case One, including the dismissal of the DWS charge, and remand that case for entry of a judgment of conviction and sentencing on the DWS charge to which defendant pleaded guilty.[2]

█    Defendant's second assignment of error is that the trial court erred in imposing a double upward departure sentence on the forgery conviction in Case Two. Defendant

---

[2] We reject defendant's suggestion that it would be premature for us to direct the trial court on remand to sentence him on the DWS charge. Although defendant has not revealed the reasoning underlying that suggestion, he may harbor the hope of evading conviction on the DWS charge after having won vacation of his PCS conviction. If so, that strategy is undercut by defendant's own request that we exercise discretion to review the error as one apparent on the face of the record. We would decline to exercise that discretion if doing so would leave defendant in a better position than a defendant who had, in comparable circumstances, timely informed the trial court of the error so that it could be corrected at the original sentencing hearing. Defendant is entitled to the bargain he made, not a windfall. *See State v. Quintero*, 160 Or App 614, 620-21, 982 P2d 543 (1999) (declining to review an unpreserved sentencing error that was apparent on the face of the record where the defendant had insisted on retaining sentencing concessions on other issues to which the state had agreed and which the trial court had adopted).

argues that the court identified only one departure factor, which would justify a single departure but not two. *See* OAR 213-008-0005(3). The state acknowledges that the trial court's stated rationale for the departures was "somewhat confusing," but it argues that we must draw "all reasonable inferences from the facts in favor of the trial court's ultimate decision" and conclude that it identified the necessary departure factors. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We review for errors of law. ORS 138.222(4); *State v. Bagley*, 158 Or App 589, 591, 976 P2d 75 (1999).

In addressing the forgery count at the sentencing hearing, the court explicitly found only one departure factor: that there were multiple victims. The court then proceeded to sentence defendant on the racketeering charge. It identified five aggravating factors in imposing both a dispositional and a durational departure sentence on that charge. To recapitulate, they were as follows:

> "You were on probation at the time this particular offense was committed. You played a key role in using computer software to provide checks for others to cash and as I said, there were multiple victims. I find that in this case the previous criminal involvement that you have persistently engaged in is very extensive and some of those previous charges are quite dissimilar [*sic*] to this particular charge. You have accumulated an extensive criminal record for your age * * *."

Following the imposition of all of the sentences, defendant's attorney objected, stating that "[s]everal of the cases, for example the forgery * * * that you sentenced [defendant] on are presumptive probationary sentences. And to the extent that the Court failed to justify two types of departure, [defendant] would object." The court replied that "[t]hat's why I stated *each of the reasons* that I mentioned I felt were * * * substantial enough to justify the departure." (Emphasis added.)

Although it is possible that the court intended to ap the factors it utilized in the racketeering sentence to the rgery sentence, the issue is not entirely free from doubt. It also possible that the court misunderstood defendant's

objection and was merely clarifying that each of the departure factors constituted an independent reason to depart on the racketeering sentence. In addition, it is unclear—assuming that the court did rely on one or more of the racketeering factors to support the double-departure forgery sentence—which particular factor(s) the court relied on. Where "the sentencing court's findings are inadequate for us to determine what factor or factors the court relied on regarding each of the departure sentences," we remand for "the trial court [to] identify the evidentiary basis for the imposition of aggravating factors, and clarify which factor or factors it relies on for sentencing on each particular charge." *State v. Mitchell*, 136 Or App 99, 103, 900 P2d 1083 (1995); *see also State v. Wilson*, 111 Or App 147, 152, 826 P2d 1010 (1992) ("It is for the trial court in the first instance to delineate and explain its reasons for a departure, including whether it is based on a single factor or a combination of factors.").

Amended judgments in case number 99C43235 vacated; original judgment in same case vacated and remanded for entry of judgment of conviction on Count 2 and dismissed in Count 1; case number 99C44880 remanded for resentencing; otherwise affirmed.